Shriver *v.* Gulf Refining Co. et al., Appellants.

Argued May 3, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Samuel G. Wagner,* of *Wagner & Wagner,* with him *Leo A. Nunnink* and *George Y. Meyer,* for appellants.

*Robert L. Wallace,* for appellee.

OPINION BY CUNNINGHAM, J., July 18, 1935:
The compensation awarded in this case was for the

disability incident to a hernia, corrected by an operation on January 26, 1933, and the question is whether it was compensable.

About three o'clock on the afternoon of Saturday, January 7, 1933, claimant, while in the course of his employment as an attendant at a filling station of the Gulf Refining Company, stepped upon a "gauge stick" which slipped from under his foot and off a platform. Claimant's foot also slipped off the elevation and in "catching" himself he was subjected to a sudden strain. After testifying that he immediately felt "a rather severe pain" in the lower right side of his abdomen, claimant continued: "And of course I held that position for a few seconds until the pain went away and then I straightened up, and finished draining the hose and put the hose back on and proceeded to check out. And that night, I went home and that evening, rather about six o'clock, I was taking my bath and the pain continued to increase and I called my manager, Mr. Coll, and recalled the accident to him, as he was right there opposite me, and told him about it."

Upon the question of "noticing" the "manifestations" specified in the hernia amendment of April 13, 1927, P. L. 186, and "communicating" them "to the employer, or a representative of the employer within forty-eight hours after the occurrence of the accident," the record discloses these uncontroverted facts.

Claimant's testimony was that when bathing he thought he could see "a bulge or protrusion at the location of the pain," but did not recall whether he reported that to the manager while talking to him on Saturday evening. C. S. Coll, the manager, testified, however, that claimant told him on Saturday evening he had noticed a "swelling in his side" and thought it might be a rupture.

That same evening, claimant was told by the manager to go to one of the several physicians selected by the employer and its insurance carrier to treat their

injured employees. He went to Dr. J. R. Simon, who had treated him for previous minor injuries. This physician told claimant "it was a sprain or strain, but that the diagnosis of a hernia had to be kept in mind as a potential diagnosis," and directed him to return on Monday. Claimant, although suffering, worked on Sunday and told the manager "the pain was increasing in [his] side." We may therefore disregard in this case what was said in Mulligan v. E. Keeler Co., 112 Pa. Superior Ct. 261, 170 A. 311, with relation to the effect of an intervening Sunday upon the calculation of the "forty-eight hours."

Referring to his second examination on Monday afternoon, January 9th, Dr. Simon testified: "His symptoms were more marked with a lot more pain over the inguinal canal but there still was no demonstrable hernia and my diagnosis at that time was that of a tearing of some of the individual fibers of the wall of the inguinal canal with the possibility of a beginning but as yet nondemonstrable hernia being held in reserve."

These facts were reported that afternoon, i. e. within forty-eight hours after the accident, by the physician to the assistant manager of the insurance carrier. Even without proof of such a report, the uncontradicted facts bring this case squarely within our decision in Romesburg v. Gallatin Market et al., 114 Pa. Superior Ct. 388, 174 A. 805. Here, as there, the physician was, under the evidence, the representative of the employer and its insurance carrier. The manager placed in charge of the filling station by the employer saw the accident and had notice that evening of its injurious effects. Within forty-eight hours after the accident one of the employer's physicians had knowledge that fibers of the wall of claimant's inguinal canal had been torn and that a hernia was descending.

By Thursday, January 12th, a direct inguinal hernia had fully developed. Dr. Simon was present at the

operation a few days later. Before the referee he expressed the positive opinion that the hernia was of recent origin and was a "true traumatic hernia," caused by the accident of January 7th.

In our opinion, this claimant has successfully rebutted the statutory presumption that his hernia was a physical weakness or ailment of gradual development and has shown notice to his employer within the intendment of the amendment. The award is supported by competent evidence and judgment was properly entered thereon by the court below.

Judgment affirmed.